[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15294

_____

D.C. Docket No. 8:15-cv-01434-VMC-EAJ

KAREN VANOVER,

                                              Plaintiff-Appellant,

versus

NCO FINANCIAL SERVICES, INC.,

                                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 17, 2017)

Before TJOFLAT and HULL, Circuit Judges, and BYRON,[*] District Judge.

BYRON, District Judge:

Plaintiff-Appellant Karen Vanover ("Vanover") sued Defendant-Appellee NCO Financial Systems, Inc. ("NCO"), on April 23, 2014, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, after NCO attempted to collect medical debts from her. See Vanover v. NCO Fin. Sys., Inc., Case No. 8:14-cv-964-T-35EAJ (M.D. Fla. 2014) (hereinafter "*Vanover I*"). Nearly one year after *Vanover I* was filed, Vanover sued NCO in Florida state court, alleging violations of the TCPA, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 595.55–.785. See Vanover v. NCO Fin. Sys., Inc., Case No. 2015-CA-1525WS (Fla. Cir. Ct. 2015) (hereinafter "*Vanover II*"). NCO removed the Florida state court action and filed a motion to dismiss for improper claim-splitting. Vanover thereafter amended her complaint in *Vanover II*, NCO renewed its motion to dismiss for claim-splitting, and Vanover sought leave to join additional parties and to amend her complaint a second time. The district court denied Vanover's motion to join additional parties and entered final judgment dismissing Vanover's Amended Complaint.

---

[*]The Honorable Paul G. Byron, United States District Judge for the Middle District of Florida, sitting by designation.

This appeal involves two issues. First, Vanover alleges the district court erred by denying her motion to join additional parties. Second, Vanover claims the district court erred in dismissing *Vanover II* for improper claim-splitting.

After thorough review, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

Whether a complaint may be dismissed for asserting claims which could and should have been presented in an earlier-filed complaint is an issue of first impression in this Circuit. Due to the nature of the claim-splitting doctrine, and because this appeal involves a Rule 12(b)(6) dismissal, we outline in detail the allegations in *Vanover I* and *Vanover II*.[1]

### A.   *Vanover I*

In *Vanover I*, Vanover alleges that during the twelve months prior to filing the complaint—April 2013 through April 2014—NCO violated the TCPA by calling her cellular telephone without express permission and in direct violation of her instructions, all in an attempt to collect medical debts allegedly owed by her to various hospitals. Vanover further contends that NCO employed an automatic telephone dialing system to place the debt collection calls. Under the TCPA, an

---

[1] As will be illuminated later in this opinion, the claim-splitting doctrine derives from the doctrine of res judicata. Since res judicata may be raised by way of a Rule 12(b)(6) motion to dismiss, so may the claim-splitting defense. See Concordia v. Bendekovic, 693 F.2d 1073, 1075–76 (11th Cir. 1982) (advising that a district court may resolve the issue of res judicata at the pleading stage where the defense appears on the face of the plaintiff's complaint and the court is in possession of any judicially noticeable facts it needs to reach a decision).

automatic telephone dialing system ("ATDS") "means equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA prohibits debt collection agencies such as NCO from calling a consumer using an ATDS except in an emergency or after obtaining the express consent of the consumer. See 47 U.S.C. § 227(b)(1)(A). On May 13, 2015, NCO moved for summary judgment in *Vanover I*, arguing that Vanover had consented to being contacted on her cellular telephone and asserting that NCO did not call her via an ATDS.

**B.**     *Vanover II*

One week later, on May 20, 2015, Vanover filed a complaint in Florida state court (*Vanover II*), alleging violations of the TCPA from April 2010 through November 2013, as well as violations of the FDCPA and the FCCPA. NCO removed the state court case to federal court and filed a motion to dismiss for improper claim-splitting. Vanover requested leave to amend her complaint, which was granted by the district court, and filed her Amended Complaint on July 31, 2015. Thereafter, NCO moved to dismiss the Amended Complaint in *Vanover II*, again citing the claim-splitting doctrine.

The Amended Complaint in *Vanover II* names the same plaintiff and defendant named in *Vanover I*. Also like *Vanover I*, the Amended Complaint in

4

*Vanover II* alleges that NCO was attempting to collect multiple unsubstantiated consumer medical debts from Vanover. The allegations in the Amended Complaint in *Vanover II* do not indicate, however, that the debts at issue in the subsequent lawsuit were different from the debts at issue in *Vanover I*. Vanover asserts that NCO used predictive dialers (ATDS) to contact her residential landline phone and her cellular phone hundreds of times beginning on April 11, 2010 and continuing through and including April 23, 2013. NCO is also alleged to have contacted third parties via their cellular, residential, and business telephone numbers to discuss Vanover's medical debts. Vanover contends that the medical debts were not owed because she is covered by Medicaid. Count One of the Amended Complaint in *Vanover II* asserts violations of the FDCPA arising from NCO contacting Vanover against her direction to cease and desist. Count Two sets forth the FCCPA state analogue to Count I, which is also predicated on NCO attempting to collect the medical debts after being instructed not to do so. Count Three is the previously described TCPA claim.

**C.     The District Court's Orders**

After NCO filed its Motion to Dismiss the Amended Complaint in *Vanover II*, Vanover sought leave to add Expert Global Solutions, Inc., formerly known as NCO Group, Inc., and Transworld Systems, Inc. as defendants in a proposed Second Amended Complaint. The district court denied the motion to join

additional parties. Thereafter, the district court granted NCO's motion to dismiss *Vanover II*, with prejudice, finding that *Vanover I* and *Vanover II* involve the same parties along with a common nucleus of operative fact and that, as a result, *Vanover II* violates the prohibition against claim-splitting.

## II.  STANDARD OF REVIEW

"We review a district court's decision regarding the joinder of indispensable parties for abuse of discretion." Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1039 (11th Cir. 2014). While dismissal pursuant to Rule 12(b)(6) is normally subject to de novo review, the district judge's dismissal for claim-splitting was premised on the ability of the district court to manage its own docket; thus, the dismissal is reviewed under an abuse of discretion standard as well. See, e.g., Katz v. Gerardi, 655 F.3d 1212, 1217 (10th Cir. 2011) (holding that abuse of discretion standard controls when a district court's dismissal due to claim-splitting is based predominantly on case management grounds); Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007) (same), overruled on other grounds by Taylor v. Sturgell, 553 U.S. 880 (2008); Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (same); Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993) (same). "A district court abuses its discretion when, in reaching a decision, it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous."

Dolgencorp, 746 F.3d at 1039 (quoting United States v. Rigel Ships Agencies, Inc., 432 F.3d 1282, 1291 (11th Cir. 2005) (per curiam)).

## III.  DISCUSSION

### A.  Vanover's Motion to Join Additional Parties

In an attempt to defeat NCO's motion to dismiss the Amended Complaint in *Vanover II* for impermissible claim-splitting, Vanover moved to join Expert Global Solutions, Inc. ("EGS") and Transworld Systems, Inc. ("TSI") in a proposed Second Amended Complaint. Vanover asserts that TSI and NCO acted at the direction of their parent corporation, EGS, without specifying how EGS directs either TSI or NCO. Vanover further alleged that EGS, TSI, and NCO violated federal and state law when they attempted to collect medical debts after Vanover advised them she did not owe the alleged debts. Vanover contended that EGS, NCO, and TSI operated out of the same call centers when they called her residential and cellular telephones between April 8, 2011, and November 26, 2013. Vanover verified TSI's involvement in placing debt collection calls to her from screenshots on her cellular telephone taken on August 21, 24, and 25, 2012.

The proposed Second Amended Complaint alleges the same violations of the FDCPA, the FCCPA, and the TCPA as were asserted in the Amended Complaint that was the subject of NCO's motion to dismiss for improper claim-splitting. The proposed Second Amended Complaint detailed the same attempted collection of

7

debts incurred on over twenty-one medical accounts as was alleged in the Amended Complaint, and these same medical accounts were the subject of the alleged unlawful collection efforts in *Vanover I*. Accordingly, in both *Vanover I* and *Vanover II*, Vanover alleged that NCO was attempting to collect debts incurred on the same medical accounts. Vanover sought to join TSI and EGS on the basis that the Court could not accord complete relief without them.

Federal Rule of Civil Procedure 19 governs the mandatory joinder of parties. First, the court must determine whether the absent party is a required party under Rule 19(a). Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1344 (11th Cir. 2011). In general, an absent party is not a required party if that party's joinder would deprive the court of subject matter jurisdiction. See Fed. R. Civ. P. 19(a). Second, if the absent party is a required party, but joinder is not feasible—i.e., joinder would deprive the court of subject matter jurisdiction—the court must consider "a list of factors to 'determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'" Id. (quoting Fed. R. Civ. P. 19(b)).

In this case, joining EGS and TSI would not have defeated the district court's subject matter jurisdiction. Thus, the issue is whether Vanover established that the district court could not accord complete relief without joining them.

The district judge concluded that Vanover failed to carry her burden under Rule 19(a) because she failed to demonstrate that she could not obtain full relief from NCO for money damages without joining EGS or TSI. Additionally, the district court found that Vanover failed to demonstrate how EGS, as the alleged parent of NCO, is liable for any violations of law allegedly committed by NCO, aside from the bald assertion that NCO acted at EGS's direction. See United States v. Bestfoods, 524 U.S. 51, 61 (1998) (reciting the fundamental principle that the existence of a parent-subsidiary relationship is not enough on its own to hold a parent company liable for the torts of its subsidiary). The district court further determined that Vanover failed to allege a basis for imposing vicarious liability against EGS based on the alleged acts of NCO; that is, there were no facts (alleged or proven) showing that EGS exercised actual control or direction over NCO's debt collection efforts.

The district court found that Vanover failed to demonstrate that TSI is a necessary and indispensable party because the motion to join additional parties and the proposed Second Amended Complaint failed to allege anything about the relationship between EGS, TSI, and NCO that would prevent Vanover from obtaining full relief for any allegedly unlawful communications from NCO. Moreover, as NCO argued below, TSI is alleged to be a California corporation whereas NCO is a Pennsylvania corporation, and the record is devoid of any

9

allegation indicating that TSI acted in concert with or controlled the actions of NCO. See Barber v. Am.'s Wholesale Lender, 289 F.R.D. 364, 367–68 (M.D. Fla. 2013) (severing the plaintiff's claims against numerous defendants where there were no allegations that the defendants engaged in concerted activity). Accordingly, we find that the district court did not err in denying the joinder of EGS and TSI pursuant to Rule 19(a).

Vanover alternatively sought to join EGS and TSI pursuant to Rule 20(a), which governs permissive joinder of parties. Rule 20(a) requires a plaintiff to demonstrate two prerequisites in order to permissively join a party: first, the claims against the party to be joined must "aris[e] out of the same transaction or occurrence, or series of transactions or occurrences," and second, there must be some question of law or fact common to all parties to be joined. Alexander v. Fulton Cty., 207 F.3d 1303, 1323 (11th Cir. 2000), overruled on other grounds by Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003) (en banc). Joinder is "strongly encouraged" and the rules are construed generously "toward entertaining the broadest possible scope of action consistent with fairness to the parties." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). However, district courts have "broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices." Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002) (per curiam).

The district court balanced the policy considerations that weigh against the desirability of joining EGS and TSI, and denied Vanover's motion for permissive joinder. The district court noted that NCO faced duplicative litigation in *Vanover I* and *Vanover II*, specifically finding that both lawsuits arose out of the same underlying conduct—the collection of medical debts allegedly owed by Vanover. The district court further observed that NCO moved to dismiss the Amended Complaint in *Vanover II* for improper claim-splitting. Accordingly, the district court found that allowing Vanover to join EGS and TSI in an attempt to defeat NCO's motion to dismiss would have the undesirable effect of exposing NCO to potential conflicting liability and inconsistent judgments. Since Vanover could have added EGS and TSI as parties in *Vanover I*, the district court determined that permissive joinder was not in the interest of justice and would not advance judicial economy.

The district court was also unpersuaded by Vanover's argument that she had just become aware that EGS and TSI should be joined. By Vanover's own admission, TSI's alleged involvement in attempting to collect the medical debts was confirmed from Vanover's cellular telephone in August 2012, before she filed *Vanover I*. Similarly, Vanover failed to allege that she had been unaware that EGS was the parent company of NCO prior to filing

*Vanover I*. Vanover's motion to join additional parties, if granted, would have had the effect of forcing NCO to incur additional delay and related costs of litigation, which could have been avoided had Vanover amended her complaint in *Vanover I*.[2]

This Court finds that the district court did not abuse its discretion in denying the permissive joinder of EGS and TSI. To be sure, Vanover's failure to timely amend her Complaint in *Vanover I* to include EGS and TSI does not justify subjecting NCO to duplicative litigation. Vanover's contention that NCO could have moved to consolidate *Vanover II* with *Vanover I* as opposed to seeking dismissal is similarly unpersuasive in that NCO had no obligation to seek consolidation of the actions. Further, as the district court aptly noticed, Vanover had nine months to amend her complaint in *Vanover I*, but she failed to do so. See Estate of Amergi ex rel. Amergi v. Palestinian Auth., 611 F.3d 1350, 1367 (11th Cir. 2010) (affirming district court's decision to sever based on case management concerns); United States v. Timmons, 672 F.2d 1373, 1380 (11th Cir. 1982) (affirming district court's denial of joinder pursuant to Fed. R. Civ. P. 20(a) and finding that permissive

---

[2] Vanover contends she was prevented by the district court from engaging in any discovery relevant to the FDCPA and FCCPA claims. We find, however, that Vanover failed to raise this issue below in the district court, thereby precluding appellate review. See Depree v. Thomas, 946 F.2d 784, 793 (11th Cir. 1991).

joinder was unwarranted due to "the late stage of the proceedings"). Accordingly, the district court properly acted within its discretion when it denied Vanover's motion to permissively join EGS and TSI as well.

**B.     NCO's Motion to Dismiss for Improper Claim-Splitting**

Once the district court disposed of Vanover's Motion to Join Additional Parties, it proceeded to NCO's Motion to Dismiss the Amended Complaint in *Vanover II* for improper claim-splitting.[3] This is an issue of first impression in this Circuit, although several federal circuit courts and district courts within Florida have comprehensively analyzed the claim-splitting doctrine.

For example, the Tenth Circuit in Katz v. Gerardi, confronted the issue of "whether a plaintiff can split potential legal claims against a defendant by bringing them in two different lawsuits" and held that "related claims must be brought in a single cause of action." 655 F.3d 1212, 1214 (10th Cir. 2011). The plaintiff in Katz was a minority shareholder in a real estate investment trust which entered into a merger agreement wherein two investors acquired all of the outstanding public shares. Id. at 1214. The plaintiff sued alleging the offering documents associated with the merger contained false and misleading statements or omissions. Id. Another shareholder, Infinity Clark Street Operating, filed a class action lawsuit in

---

[3] "The 'claim splitting doctrine' applies where a second suit has been filed before the first suit has reached a final judgment." Zephyr Aviation III, L.L.C. v. Keytech Ltd., No. 8:07-CV-227-T-27TGW, 2008 WL 759095, at *6 (M.D. Fla. Mar. 20, 2008).

federal court alleging breach of contract and breach of fiduciary duty claims related to the merger which was stayed pending arbitration. Id. Katz thereafter filed a separate class action lawsuit in an Illinois state court that was removed to federal court asserting security law claims related to the merger and subsequently amended the class action to join Infinity as a plaintiff. Id. The district court dismissed Infinity from the Katz's complaint, finding that joinder of Infinity resulted in the improper splitting of claims which could have been brought in Infinity's earlier class action lawsuit. Id. The district court held, and the Tenth Circuit agreed, that:

> The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases."

Id. at 1217 (quoting Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp., 296 F.3d 982, 985 (10th Cir. 2002)); see also Curtis v. Citibank N.A., 226 F.3d 133, 139 (2d Cir. 2000) ("[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.").

Indeed, "[i]t is well settled that a plaintiff 'may not file duplicative complaints in order to expand their legal rights.'" Greene v. H & R Block E. Enters., Inc., 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010) (quoting Curtis, 226 F.3d at 140). The claim-splitting doctrine thereby "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the

grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.'" Id. (quoting Stark v. Starr, 94 U.S. 477, 485 (1876)). The claim-splitting doctrine thus "ensure[s] fairness to litigants and . . . conserve[s] judicial resources." Id.

Claim-splitting has been analyzed as an aspect of res judicata or claim preclusion. See, e.g., Davis v. Sun Oil Co., 148 F.3d 606, 613 (6th Cir. 1998) (per curiam) (referring to claim-splitting as "the 'other action pending' facet of the *res judicata* doctrine"); Shaver v. F.W. Woolworth Co., 840 F.2d 1361, 1365 (7th Cir. 1988) (observing that "the doctrine of *res judicata* doctrine prevents the splitting of a single cause of action and the use of several theories of recovery as the basis for separate suits"); Khan v. H & R Block E. Enters., Inc., No. 11-20335-Civ, 2011 WL 3269440, at *6 (S.D. Fla. July 29, 2011) ("[F]ederal courts borrow from the *res judicata* test for claim preclusion to determine whether [a] plaintiff['s] claims were split improperly."). While claim-splitting and res judicata both promote judicial economy and shield parties from vexatious and duplicative litigation, "claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments." Katz, 655 F.3d at 1218. Accordingly, the Tenth Circuit's test for claim-splitting "is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." Id. We agree with the

test announced by the Tenth Circuit and concur that it "makes sense, given that the claim-splitting rule exists to allow district courts to manage their docket and dispense with duplicative litigation." Id. at 1218–19.

The district court in this case properly applied a two-factor test whereby the court "analyzes (1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." Khan, 2011 WL 3269440, at *6. Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts. Petro-Hunt, L.L.C. v. United States, 365 F.3d 385, 395–96 (5th Cir. 2004) (internal citations, quotations, and alterations omitted). The Fifth Circuit has adopted the transactional test of the Restatement (Second) of Judgments, § 24, which instructs the district court to consider the following factors:

> What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. [Hence,] "[t]he critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts*."

Petro-Hunt, 365 F.3d at 396 (footnotes omitted); see also Hatch v. Boulder Town Council, 471 F.3d 1142, 1150 (10th Cir. 2006) ("Under the transactional test, a

16

new action will be permitted only where it raises *new and independent* claims, not part of the previous transaction, based on the new facts.").

Vanover argues that the operative or transactional nucleus of facts related to her TCPA claims in *Vanover I* are limited to whether NCO placed calls to her cellular telephone using an ATDS without her express consent. Vanover asserts that the claims asserted in *Vanover II* are distinct and relate to abusive and harassing communications in the collection of consumer debts prohibited by the FDCPA and FCCPA. However, the distinction Vanover draws between *Vanover I* and *Vanover II* is artificially narrow and runs contrary to the prohibition against bringing a successive cause of action arising from the same nucleus of operative facts. See Petro-Hunt, 365 F.3d at 395–96.

The district court correctly found that the first prong of the claim-splitting analysis is satisfied, as the parties are identical in *Vanover I* and *Vanover II*. Turning to the second prong, the district court found the claims asserted in *Vanover I* and *Vanover II* are based on the same nucleus of operative facts, notwithstanding Vanover's attempt to distinguish between the two actions. Vanover takes the position that *Vanover II* involves calls that began in April 2010—earlier than the date alleged in *Vanover I*—and that *Vanover II* involves calls NCO made to her residential telephone and to third parties—unlike the allegations made in *Vanover I* where NCO is alleged to have called only Vanover's

cellular telephone. The district court concluded that the claims in *Vanover II* are still based upon the same collection efforts set forth in *Vanover I*, regardless of whether the calls were placed to cellular telephone calls, residential telephones, or to third parties. The trial judge also determined that merely extending the time frame in *Vanover II* to cover an earlier period than was alleged in *Vanover I* does not impact the claim-splitting analysis, since splitting the time frame into two different periods does not create a separate transaction. The district court correctly concluded that all of the alleged wrongs by NCO occurred consecutively in time and prior to filing the compliant in *Vanover I*; hence, the collection efforts which form the basis of *Vanover I* and *Vanover II* arise from the same transaction or series of transactions. Stated differently, the factual bases for both lawsuits are related in time, origin, and motivation, and they form a convenient trial unit, thereby precluding Vanover from splitting her claims among the lawsuits.

Finally, the district court found that claim-splitting is not defeated by Vanover's addition of causes of action in *Vanover II*. See Trustmark Ins. v. ESLU, Inc., 299 F.3d 1265, 1270 (11th Cir. 2002) (holding that res judicata prevented a plaintiff from bringing successive lawsuits for separate breaches of the same contract, committed by the same party, and involving the same general type of conduct even where different causes of action are alleged); Myers v. Colgate-Palmolive Co., 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000) (holding that rule

against claim-splitting barred ERISA lawsuit where the first lawsuit was filed under Title VII and ADEA because both cases arose out of "the same transactional nucleus of facts, and would involve substantially the same evidence"). Vanover includes two new causes of action in *Vanover II* alleging violations of the FDCPA and FCCPA. These claims arise out of the same transactional nucleus of facts as the TCPA claim asserted in *Vanover I*. Accordingly, the addition of separate causes of action in *Vanover II* does not prevent application of the claim-splitting doctrine. To rule otherwise would defeat the objective of the claim-splitting doctrine to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket. Wherefore, the district court did not err in dismissing *Vanover II* for improper claim-splitting.

### III.  CONCLUSION

For all of these reasons, we affirm the district court's dismissal of Vanover's amended complaint.

**AFFIRMED.**